GREGORY A. KASPER
kasperg@sec.gov
ZACHARY T. CARLYLE
carlylez@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against –<br><br>IRB BRASIL RESSEGUROS S.A.,<br><br>Defendant. | Civ. _23-cv-03905_<br>**ECF CASE**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff United States Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint against defendant IRB Brasil Resseguros S.A. ("IRB" or "Defendant"), alleges as follows:

## SUMMARY

1.       This is an SEC enforcement action against IRB, a Brazilian reinsurance company, based on the actions of its former senior executive Fernando Passos ("Passos") in connection with planting a false story with the media and disseminating false documents claiming that Berkshire Hathaway Inc. ("Berkshire") had recently made a substantial investment in IRB. In early February 2020, IRB's stock price fell significantly following a short-seller publicly releasing a letter questioning IRB's financial results. In late February and early March 2020, in an effort to boost IRB's stock price, Passos planted the false story that Berkshire had invested in

IRB and caused IRB to make false and misleading statements directly to investors and at least one securities analyst.

2.      After the media reported the false Berkshire news following the close of trading on February 26, 2020, IRB's stock price rose by more than 6%. Following Berkshire's public denial that it had ever invested, or intended to invest, in IRB, the company's stock price dropped materially over the next two trading sessions.

3.      As a result of this misconduct, IRB, through the actions of Passos, violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND REQUESTED RELIEF

4.      The Commission brings this action pursuant to the authority conferred on it by Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. § 78u(d)-(e) and 78aa]. The Commission seeks a permanent injunction against IRB, enjoining it from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint. The Commission further seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa].

6.      Venue lies in this Court pursuant to Sections 21(d) and 27 of the Exchange Act [15 U.S.C. § 78u(d) and 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York, Passos

and IRB have transacted business in this District, and IRB investors who were harmed by the fraud are located in this District.

**DEFENDANT**

7.      **IRB Brasil Resseguros S.A.** is a Brazilian reinsurance company with headquarters in Rio de Janeiro, Brazil. IRB's stock trades on the B3 S.A. - Brasil, Bolsa, Balcao stock exchange (the "B3 Exchange") located in Sao Paulo, Brazil. At the time of the fraudulent conduct alleged herein, approximately 25 percent of IRB's shareholders were investors based in the United States.

**RELATED PARTY**

8.      **Fernando Passos** is a resident of Sao Paulo, Brazil. At the time of the fraudulent conduct alleged in this Complaint, Passos was IRB's executive vice president of finance and investor relations. In these roles, Passos was IRB's most senior financial officer and was responsible for IRB's communications with investors.

**FACTUAL ALLEGATIONS**

9.      In early February 2020, a Brazilian asset management firm that was short-selling IRB stock released a letter questioning the reliability and sustainability of IRB's financial results (the "Short-Seller Letter").

10.      Among other things, the Short-Seller Letter cited to comments made by Warren Buffett, the Chairman and chief executive officer ("CEO") of Berkshire, which is a large publicly traded U.S.-based holding company, about the reinsurance industry generally. Mr. Buffett and Berkshire are well-known investors and financial commentators concerning the insurance and reinsurance industry, and Berkshire owns large insurance businesses.

3

11.     In the wake of the Short-Seller Letter, the price of IRB's stock declined significantly.

12.     In an attempt to bolster IRB's stock price and reassure investors that IRB was a sound investment, Passos disseminated a false story to the media about Berkshire making a large investment in IRB stock. Passos also made false and misleading statements to at least four investors and at least one securities analyst about Berkshire becoming a substantial investor in IRB.

    **I.**    **IRB, Directed by Passos, Spread False Information Through the Media and Made False and Misleading Statements about Berkshire Investing in IRB.**

13.     IRB, directed by Passos acting in his capacity as IRB's executive vice president of finance and investor relations, engaged in several fraudulent and deceptive acts that operated as a fraud and deceit on investors in connection with the dissemination of the false story concerning Berkshire's purported investment in IRB. In connection with this deceptive conduct, IRB, through Passos, also made false and misleading statements to at least four investors and at least one securities analyst concerning Berkshire's purported investments in IRB.

14.     IRB, through Passos, acted knowingly or recklessly in engaging in the fraudulent and deceptive conduct and making the misstatements set forth below.

    **A.**    **IRB, Directed by Passos, Fabricated Documents and Spread a False Story about Berkshire Investing in IRB to the Media.**

15.     On February 22, 2020, Passos sent text messages to IRB's Communications and Marketing Manager (the "Communications Manager") stating that Berkshire was an investor in IRB and that it had recently sharply increased its position in IRB stock. Passos noted that Berkshire was cited several times in the Short-Seller Letter and urged the Communications Manager to work with IRB's public relations firm to leak the purported information about

Berkshire's investment to a journalist who would be willing to publish it without attribution to IRB.

16.     Passos's claim that Berkshire was an IRB investor was false. Berkshire had not recently increased its position in IRB stock and, in fact, held zero shares of IRB stock.

17.     IRB, through Passos, knew or was reckless in not knowing that the claim that Berkshire was an investor in IRB was false. For instance, on February 21, 2020, Passos requested and received an email with an attached schedule of IRB's shareholders as of February 18, 2020, organized from largest to smallest shareholder. The shareholder list showed that Berkshire was not an IRB investor.

18.     To lend credibility to the false story concerning Berkshire's investments in IRB and increase the likelihood that it would be reported in the press, Passos fabricated a shareholder list that showed Berkshire had made substantial purchases of IRB stock in February 2020 and was the fourth largest shareholder of IRB as of February 18, 2020 (the "Fake Shareholder List"). On February 22, 2020, Passos sent text messages with images of the Fake Shareholder List to the Communications Manager, noting that a journalist could use the Fake Shareholder List to confirm the purported news of Berkshire's investment. Passos instructed the Communications Manager to share it with IRB's public relations firm and ultimately with the press. IRB's Communications Manager followed Passos's instructions and forwarded the information about Berkshire's supposed investment in IRB and the Fake Shareholder List to IRB's public relations firm the same day.

19.     On February 23, 2020, Passos emailed the Fake Shareholder List to the Chairman of the board of directors of one of IRB's largest investors ("Investor A"). The Fake Shareholder List falsely showed that, as of February 18, 2020, Berkshire owned over 28 million shares of

IRB stock and was one of its largest shareholders. IRB, through Passos, misrepresented to Investor A that Berkshire owned over 28 million shares of IRB stock and was one of its largest shareholders.

20.     On February 23, 2020, Passos also continued his efforts to get his false story concerning Berkshire's purported investment leaked to the press and reported to the public. Passos sent numerous text messages to the Communications Manager suggesting specific journalists to contact, through the public relations firm, about publishing the story. Passos also texted his subordinate, IRB's Director of Investor Relations, stating that they will plant, and Passos will spread, the story that Berkshire bought 28 million shares of IRB. Passos further elaborated that he planned to use an old email with a Berkshire executive to help build the story about Berkshire's supposed recent investment.

21.     Passos followed through on his plan to bolster his false story when, later on February 23, 2020, he sent IRB's Communications Manager an image of an email he fabricated. The email, dated February 21, 2020, purported to be from IRB's CEO to a Berkshire executive, thanking Berkshire for its recent investment in IRB (the "Fake Berkshire Email"). The Communications Manager sent this additional supposed evidence of Berkshire's investment to IRB's public relations firm the next day.

22.     From February 24, 2020, to February 28, 2020, Passos attended meetings with investors and securities analysts in Europe and the United States to reassure them of IRB's sound financial results, notwithstanding the recent Short-Seller Letter (the "Roadshow"). During this time, IRB, through Passos, made false and misleading statements to investors and at least one securities analyst.

23.     On or about February 24, 2020, while Passos was in London for the Roadshow, IRB, through Passos, misrepresented to an analyst and at least two investors that Berkshire had invested in IRB. Specifically:

    a.  Passos met with a securities analyst who covered IRB ("Analyst A") and falsely represented that Berkshire had invested in IRB.

    b.  Passos represented to a large IRB investor ("Investor B") that Berkshire had recently purchased 28 million shares of IRB.

    c.  Passos met with another large IRB investor ("Investor C") and represented to the investor that Berkshire had invested in IRB.

24.     While on the Roadshow, Passos also sent dozens of text messages to the Communications Manager urging that the false information about Berkshire's investment in IRB be circulated to the press.

25.     For instance, on February 26, while in New York, New York, Passos exchanged dozens of text messages with the Communications Manager in which he continued to tell her to contact various journalists through IRB's public relations firm and spread the false information concerning Berkshire's substantial investment in IRB.

26.     On or about February 26, IRB's public relations firm, acting at the direction of the Communications Manager, who was following Passos's instructions, provided information about Berkshire's purported investment in IRB and sent the Fake Shareholder List to at least one journalist. On the same day, when the Communications Manager relayed a journalist's request for the most up-to-date version of the IRB shareholder list, Passos, while in New York, sent the Communications Manager images of the Fake Shareholder List and the Fake Berkshire Email.

The Communications Manager then sent these images of the Fake Shareholder List and Fake Berkshire Email to IRB's public relations firm.

**B.    The Media Reported the Fake Berkshire Story, IRB's Stock Price Increased, and Passos and IRB Continued to Spread the False Information.**

27.    After trading closed on February 26, 2020, and then again on February 27, Brazilian media reported Berkshire's purported investment in IRB based on the false information supplied by Passos through IRB's public relations firm.

28.    On February 27, U.S. media company Bloomberg issued a report titled "IRB Climbs Amid Report Buffett's Berkshire Increased Stake," noting that the increase in IRB's stock price was "the most intraday on record" after a Brazilian newspaper "reported Warren Buffett's Berkshire Hathaway increased its stake in the firm amid the stock's recent sell-off."

29.    From the close of trading on February 26 to the close of trading on February 27, IRB's stock price increased by more than 6%.

30.    On February 28, 2020, Passos, while in Boston, Massachusetts for the Roadshow, met with an institutional investor that held IRB shares ("Investor D") and implied that Berkshire had in fact recently invested in IRB.

31.    On March 2, 2020, Passos continued to spread the false Berkshire information. On March 2 during a call with securities analysts, IRB's CEO, relying on information provided by Passos and with Passos on the call, made statements indicating that Berkshire had invested in IRB. On the call, Passos did nothing to correct the false statements that Berkshire had invested in IRB. Later that day, the Brazilian media again reported the false Berkshire information.

**C.    Berkshire Denied that it Invested in IRB and IRB's Stock Price Plunged.**

32.    After the market closed on March 3, 2020, Berkshire issued a press release denying that it had ever invested, or had any intention of investing, in IRB.

8

33.     IRB's Director of Investor Relations forwarded a copy of Berkshire's public denial that night to Passos, to which Passos responded with the Portuguese equivalent of: "Damn" and "We're [expletive]!"

34.     From the close of trading on March 3 through the close of trading on March 4, IRB's stock price dropped materially.

35.     After the close of trading on March 4, 2020, IRB announced that Passos and IRB's CEO had resigned.

36.     On March 5, IRB's stock price continued to drop and closed down significantly lower from the close of trading on March 3, 2020, through the close of trading on March 5.

**II.     IRB, through Passos, Violated the U.S. Securities Laws by Engaging in Fraudulent and Deceptive Acts.**

37.     As detailed above, Passos committed numerous fraudulent and deceptive acts in connection with spreading false information about the purported Berkshire investment in IRB. Among other things, Passos, knew or was reckless in not knowing that he:

a.   Created the false Berkshire story and caused it to be disseminated to the public through the media;

b.   Fabricated the Fake Shareholder List, emailed it to Investor A, and caused it to be disseminated to the media through IRB's public relations firm;

c.   Fabricated and disseminated the Fake Berkshire Email to IRB's Communications Manager and public relations firm;

d.   Made false and misleading statements to at least four investors (Investors A, B, C, D) and one securities analyst (Analyst A) concerning Berkshire's purported investment in IRB.

e.  Disseminated false and misleading information about Berkshire's supposed investment in IRB to securities analysts through IRB's CEO who repeated the false Berkshire investment information Passos had provided to him.

38.     Passos engaged in the fraudulent and deceptive acts detailed above while he was IRB's most senior financial officer and the IRB officer responsible for investor communications. As a result, IRB, through Passos, engaged in a fraud and Passos's knowledge or recklessness may be imputed to IRB for purposes of IRB's violations of the U.S. securities laws.

**III.     IRB, through Passos, Made Material Misstatements and Omissions.**

39.     As detailed above, Passos made false and misleading statements to at least four investors (Investors A, B, C, D) and one securities analyst (Analyst A).

40.     Passos's statements to the Investors and Analyst concerning Berkshire's investment in IRB were false and misleading when made and Passos knew or was reckless in not knowing that his statements about Berkshire's purported investment in IRB were false and misleading. Berkshire had not invested in IRB and, on February 21, 2020, Passos received a shareholder list that showed Berkshire was not an IRB shareholder.

41.     The false and misleading statements made by IRB through Passos concerning Berkshire's purported investment in IRB were material. Berkshire and its Chairman and CEO, Warren Buffet, are well-known investors and Berkshire owns large insurance businesses. When the false information regarding Berkshire's investment was reported to the public, IRB's stock price rose approximately 6%. Following Berkshire's denial that it had ever invested, or had any intention of investing, in IRB, and the resignations of Passos and IRB's CEO, IRB's stock price decreased materially. A reasonable investor would consider Berkshire's purported investment in IRB important information when deciding to purchase, hold, or sell IRB stock.

42.     Passos made the false and misleading statements while acting as IRB's most senior financial officer and the IRB officer responsible for investor communications. As a result, IRB, through Passos, made the false and misleading statements. Passos knew or was reckless in not knowing that the statements were false. Passos's knowledge or recklessness may be imputed to IRB for purposes of IRB's violations of the U.S. securities laws.

**IV.     IRB's Conduct, through Passos, was in Connection with the Purchase or Sale of Securities.**

43.     At the time IRB, through Passos, engaged in fraudulent and deceptive acts and made false and misleading statements concerning Berkshire's purported investment in IRB, IRB's stock was publicly trading on the B3 Exchange. Investors, including certain U.S. investors, purchased shares of IRB stock while the false Berkshire information was in the public domain and had not yet been corrected by Berkshire. IRB, through Passos, made false and misleading statements to investors in IRB stock and at least one securities analyst regarding Berkshire's supposed investment, including during meetings about IRB's reported financial results and business prospects. Accordingly, IRB's fraudulent and deceptive conduct and false and misleading statements, made through Passos, were in connection with the purchase or sale of IRB's securities.

44.     In connection with the conduct alleged in this Complaint, IRB, through Passos, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, including sending text messages to facilitate the dissemination of the false Berkshire news to the media and forwarding the Fake Shareholder List and Fake Berkshire Email, while Passos was in the United States.

**V.     IRB, through Passos, Engaged in Conduct in the United States that Constitutes Significant Steps in Furtherance of its Violations and its Conduct had a Foreseeable Substantial Effect Within the United States.**

45.     The misconduct alleged in this complaint had foreseeable substantial effects on investors in the United States. These effects were foreseeable to Passos and IRB, through Passos, because, among other reasons, at or around the time Passos began engaging in the misconduct that is the subject of this Complaint, Passos received a shareholder list that showed U.S. shareholders held significant investments in IRB stock. At the time of the fraudulent conduct alleged in this Complaint, approximately 25 percent of IRB's shareholders were investors based in the United States.

46.     IRB, through Passos, took significant steps in furtherance of the fraud while in the United States, including sending text messages with the Fake Shareholder List and Fake Berkshire Email from New York, New York, and misleading an institutional investor regarding Berkshire's investment in IRB at a meeting in Boston, Massachusetts. In addition, Passos sent dozens of text messages from the United States to facilitate the dissemination of the false Berkshire news to the media.

## CLAIM FOR RELIEF
### Violation of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

47.     The Commission realleges and incorporates by reference paragraphs 1 through 46, as though fully set forth herein.

48.     Through Passos, IRB, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: employed devices, schemes or artifices to defraud; made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

49.     By engaging in the conduct described above, IRB violated and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court:

### I.

Find that IRB, through Passos, committed the violations alleged in this Complaint;

### II.

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining IRB from violating, directly or indirectly, the laws and rules alleged in this Complaint;

### III.

Grant such other relief as this Court may deem just or appropriate.

## **JURY DEMAND**

The Commission demands a trial by jury on all claims so triable.

Dated: May 9, 2023                        S/ Gregory A. Kasper

                                          Gregory A. Kasper (NY 2735405; SDNY GK6596)
                                          Regional Trial Counsel
                                          Zachary T. Carlyle (*pro hac* application
                                          forthcoming)
                                          Senior Trial Counsel
                                          Attorneys for Plaintiff
                                          SECURITIES AND EXCHANGE COMMISSION
                                          1961 Stout Street, 17th Floor
                                          Denver, Colorado 80294
                                          (303) 844-1000
                                          kasperg@sec.gov
                                          carlylez@sec.gov